We appreciate that the government accepted our invitation to come and answer questions and fill in any blanks in our thinking with respect in the first instance to your motion for dismissal and we may get to the merits as well, Mr. McClellan. I'm here and I can discuss both issues. With me today from the Office of the Chief Trial Attorney, Your Honor, is Detective Frank Marsh. Welcome. Very helpful. We were a bit concerned in your motion for dismissal as to the implications of dismissing a bid protest should the protest be of sufficient merit that the government on its own, the agency, decides to cancel the procurement for the convenience of the government. Yes, Your Honor. Is that your sense that this is a pervasive practice? I don't believe it's a pervasive practice, Your Honor. In this case, the cancel of the termination for convenience, the contract wasn't terminated to avoid litigation or to avoid the possibility of having an adverse effect. We don't know why it was terminated. We weren't told and I think that that's irrelevant. We do know that it was terminated for convenience, which meant that certain payments were made. It was not as if the procurement had been cut off before it was completed. Well, attached to our motion to dismiss, Your Honor, we did provide the court with two letters explaining why it was terminated. It was an operation in effect for two years, correct? Almost two and a half, yes. The initial year was performed as well as they were on the second option. Okay. So what I don't understand is one of the arguments you make in your mootness proposal or motion is that bid preparation costs would not be available because it was terminated. And what you cite as support are cases where the solicitation was terminated, which I take to mean that the contract, there was never any performance at all. So I don't understand what the basis is for your saying this case is moot and he couldn't at least go after bid preparation costs when in fact the contract had been in operation for two years before it was terminated. Because ever since 1996 when the Administrative Disputes Resolution Act codified the trial court's bid proposal jurisdiction, it was based on relief of having either injunctive or declaratory relief, i.e., the award was invalid or the contract's invalid, or that we want to have funds enjoined from being spent for further performance. And that's not the case here. And even if Your Honor is— But he asked for bid preparation costs in terms of relief initially? He asked for— Attorneys? Two things, Your Honor. Attorneys? In his prayer for relief from his complaint. He asked for declaratory relief to declare that the contract was invalid, award two, if the award was invalid. And then he also asked in the second instance for injunctive relief. He did seek bid preparation costs pursuant to 1491B. But in this case, Your Honor, there's no underlying contract. But why should that preclude recovery of bid preparation costs as distinct from the cases that Judge Prost alluded to where there was a cancellation of the solicitation or the award itself as compared to a termination for convenience of the contract? You have a contractor that contends that the initial award was inappropriate. And two years later, the contract is terminated for convenience. But why does that moot the initial demand for bid preparation costs in conjunction with what they contend is an unfairly and improperly awarded contract in the first place? Because to be entitled for bid preparation costs, there has to be a finding that the—in this case, Orion actually would have been awarded the contract. He would have been a prevailing party. Just because— Well, that might happen if we rule in Orion's favor on the merits, correct? Well, we would respectfully disagree, Your Honor. And that's because the trial court never reached the other issue we proposed as to even assuming Fiori did misrepresent Mr. Zaccone's availability to work. We always argued that that was a non-prejudicial error, primarily because it was a best value procurement where Fiori's proposal was clearly superior. But I don't understand. Your motion is predicated on the fact that something new and different happened, and that was the termination of the contract. So just when you—responding to Judge Lynn's question, how did that—the termination of the contract, what has that got to do with whether or not he ought to have bid preparation costs? Because there is—Orion no longer possesses—and it no longer can be declared a prevailing party below. You're saying that because two years later, for whatever reason, the contract is no longer in existence, any—let's say that there was a clearly illegal aspect of the procurement, just to make it easier. Prejudicial. That that's— Prejudicial, yes. One may assume if it were illegal—let's assume that it was prejudicial. After all, they lost the bid, so they were certainly prejudiced in their business. You're saying that that whole situation is mooted because two years later, for whatever reason, the contract was terminated. Yes. That's the government's position? That's the government's position in this instance, under these facts, because Orion does not stand a chance of being a successful offeror. How do we know that? I mean, we've got to go on the—I mean, so there's an appeal before us that deals with the merits that we've yet to decide, and you don't know how we're going to decide it. So you're saying there's nothing—leaving aside, if the contract were still ongoing, had not been terminated, you're saying there's no way he can prevail on the appeal? No. If he prevailed on the appeal and the contract was still ongoing, then the—depending on the court's ruling, he would remain back to the trial court. If he wants bid preparation costs, that would be prevailing. I mean, the contract's been in effect for two years. Let's say it hadn't been terminated and we had this case. He still could not retroactively have performed this contract as performed by the bidder to whom it was awarded. Right, but there would have to be a finding that he would have been a successful offeror, and there is no longer a chance for the trial court to find that because there's no contract in existence. Unlike the GAO— That's the question. You're answering the question with the question. We don't know. I mean, what if we were to reverse the trial court on appeal and say that he was prejudiced, that he should have been awarded the contract? I don't see how whether or not the contract is terminated after two years or still ongoing would affect our determination on prevailing party. It may affect the remedy we could impose, but how does the termination affect our ruling on the merits here? It does not affect your ruling on the merits, but there's been no finding below on the key legal issue that he would have been a successful offeror. But we might reverse that. How do you know what we're going to do on the merits? How do you know what we could do? Why is that affected by the termination of the contract? The decision that's currently before the court is whether there was a misrepresentation on the part of the authority. Assuming the court rules against the government and overturns the trial court, it would remain back and then determine whether that misrepresentation was prejudicial. Right. And what if that happened? And if the trial court at that time finds it wasn't prejudicial— But what if it finds it was prejudicial? But by the time we remain back, what is the contract matter that's the jurisdictional basis for the court at that time? Bid preparation costs, which can be sizable. But in that case, Your Honor, then, there's nothing to preclude someone from—let's say it's a typical, not a typical one-year or the two-year option. Let's say it's a typical service contract that runs for a year. Unlike the GAO, which has the 10-day rule, i.e., you must protest within 10 days of award, the Court of Federal Claims doesn't have any such rule. So theoretically, if the jurisdictional hook was not the contract but the bid preparation costs, what's to stop a disappointed bidder from applying, filing a lawsuit in the Court of Federal Claims five years and 364 days after award? Four years, 364 days after performances. But you're saying in any case, if it—by the time it gets to the trial court or to us, the contract has expired—let's say it was a—let's say this case, hypothetically, was a one-year contract. So the government never terminated the contract. The contract was performed for one year, and it's over. Are you saying that case would also be moved here? In that case, yes. And I think the court's decision from the Pacificor case is instructive. In that case, it was a—Pacificor was cited in our motion, our rootless motion. The courts disagreed with the government. We made that same argument, and the court disagreed. But the court said because even though Pacificor lost below, he still—that company still had an interest in getting fees. But why did they have an interest? And that's because the protest was brought at the GSBCA. Now, the GSBCA no longer hears protests. The GAO does. But the GAO's rule for granting bid preparation costs isn't you must be a prevailing party, as is the rule below in the Court of Federal Claims. The rule there in the GAO is whether there just was a legal error that affected the procurement. The catalyst theory that, you know, you must be a prevailing party that we have in the Court of Federal Claims does not apply. So if, in fact, Orion brought its bid protest at the Government Accountability Office and was unsuccessful, brought the same protest, and at that time the plaintiff didn't move, arguably they still could, you know, bring a bid preparation cost if there was legal error, but not here. You have to be a prevailing party. In this way, there's no contract for the court to award or enjoin. Let me shift to a slightly different subject. In your motion, you also request a vacatur. That is an issue. And as I understand it, your argument is that that somehow is necessary to prevent some harm. Given the fact that your motion for judgment on the record was granted and the injunction was denied, what is it that you're concerned about? The decision of the lower tribunal was entirely favorable to the government. Our concern there, Your Honor, only was after reading Munsonware as well as Bancorp v. Bonomal, is that in this manner, assuming this case is moved, Orion would not have a chance to fully litigate its legal argument through the whole system. And I don't know if we left that lower court decision in place, the government was not aware if there was any other possible ongoing litigation that could be affected. And so that's why we suggested that. Because it was through, not the contracting agency, but government happenstance that moved this case or terminated the case. In the interest of justice, we thought those were the exceptional circumstances because it's not like in Bancorp where the losing party, through a settlement agreement, chose not to appeal. In this case, assuming the contract was still ongoing, I believe Mr. Martin would be here vigorously arguing his position. But the contract's not ongoing. The government is not aware. I don't think that we had any other litigation. I mean, I can understand your position if there was some adverse ruling that might impact other procurements or might set a precedent that the government is not comfortable with. But that's certainly not the case here. Please, Your Honor, we are not uncomfortable with the lower court's decision. We strongly believe it was correct. But in this case, one of the things the courts looked to when deciding to suggest baggage order, and that is, was the judicial system somehow tampered with by one of the parties? And we don't believe that's the case here. Can I ask you a question on the merits? And I can't find it now in the brief, but I thought I read an argument in your brief about this. Granted, if I've got it right, at the time that the representation was made about this employee, the person that made the representation had reason to believe the representation was true, correct? Yes, Your Honor. But shortly, let's assume hypothetically that that is the case. But shortly thereafter, they find out that it wasn't true. Is there not an obligation on behalf of the potential contractor to come to the government and tell them they made a mistake, or as things turned out, that wasn't true? Because you act as if, well, because technically the time they said it, it was correct, that's fine. But is there not some obligation when you, even if at the time it's correct or true, if you find out shortly thereafter where the proposal was still under consideration that something you said was wrong or has changed, isn't there a requirement to come and tell the government about it? I think there is a requirement to always be honest with the government as far as the procurement process. In this case, why I don't think there was an affirmative conversation with the government explaining why Mr. Zucconi wasn't taking the job is because Mr. Zucconi went to work for the Center of Countermeasures. They knew he wasn't coming in to be the PM because he was working there. That was in November. That was later. That was in November, as I recall. We're talking about what happened either August 3rd or September 3rd, I think, whenever the bid was submitted. When the bid was made and they include the representation that he would accept the position if offered, are you saying they knew then or within the two days after that he said, no, don't include my resume, that he was going to work for the government instead? No, Your Honor. The events were in August of 2003. Bids were submitted. At that time, Mr. Zucconi has stated he would work for FIORA if awarded. Bids are submitted. September 2nd, I believe, is when bids have to be in. September 3rd, Mr. Zucconi signs the non-compete agreement, saying not that I won't work for FIORA. In fact, the non-compete agreement specifically says he won't help FIORA prepare the bid. But he told FIORA not to include his resume, which had already been included. That's true. But he also told FIORA, I will work for you if, in fact, my resume is included. That's right, but he said don't include my resume, and it had been included. I think that's part of the question. Was there an obligation to tell the government of this significant change? No, because the obligation was just to let them know who will be working for you on the project. And Mr. Zucconi always maintained, stated in his declaration, stated that I plan on working for you if you get the award. But what happened in early September, September 3rd or 4th, something happened, right? His current employer told him no, no, no, you can't do that. No, they signed a non-compete, which I respectfully disagree with. They signed a non-compete agreement where he said I won't assist, and it was a future, I won't re-read the agreement as being a future, assist FIORA or any other competitor in preparing their bid. And he tells FIORA don't submit my resume, which they've already submitted. And Mr. Sanchez told Mr. Zucconi that that horse has left the barn. I didn't see that in the briefs. Any worries that he told him that I've already done it? It's in his declaration, and I can provide sites for you. I'd have to check the declaration. Mr. Sanchez specifically says I plan on your resume submitted. Now, of course, he could have at the oral proposal said to the court or to the reviewing officials that Mr. Zucconi said don't use my resume. So we'll pull his resume. However, Mr. Zucconi has told us if we win the award, he will be the program manager.  They didn't pull his resume, but the key was who do you want to nominate for this position? Who's going to come work for FIORA? And the question certainly was answered, Mr. Zucconi. And Mr. Zucconi always maintained that he was going to work for FIORA if FIORA was awarded the contract. Okay. I guess we have the issues. Do send us a note with the sites to where the government was told about this change of position. The site was, Your Honor, that Mr. Sanchez had told Mr. Zucconi that the resumes were already submitted. But he didn't tell the government that it had been. Thank you.